IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRACY R. HOPKINS, # N-93518, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-cv-939-MJR |
| ) | |
| BRETT A KLINDWORTH, ) | |
| CAROLA McBRIDE, ) | |
| CHRISTOPHER WALKER, ) | |
| C/O RSLEY, C/O PERADOTTA, ) | |
| DARWIN JAUSEL, JASON CONTES, ) | |
| UNKNOWN PARTY PLUMBER, ) | |
| and ILLINOIS DEPARTMENT OF ) | |
| CORRECTIONS, ) | |
| ) | |
| Defendants. ) | |

## <u>MEMORANDUM AND ORDER</u>

**REAGAN, District Judge:**

Plaintiff, currently incarcerated at Pontiac Correctional Center ("Pontiac"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims arose while he was confined at Pinckneyville Correctional Center ("Pinckneyville"). Plaintiff is serving a twelve-year sentence for being an armed habitual criminal. Plaintiff claims that he had to endure substandard conditions in a segregation cell, his hearing on a disciplinary infraction was improperly delayed, and his personal property was damaged or lost.

More specifically, Plaintiff claims that on January 19, 2012, Defendants Walter and Rsley (correctional officers) issued him an inmate disciplinary report ("IDR") for fighting. They claimed that Plaintiff struck another inmate on the back of the neck with his fist (Doc. 1, p. 10). Plaintiff was placed in investigative segregation pending a hearing on the infraction.

When Plaintiff's personal property was delivered to him, he noticed two

envelopes containing numerous family pictures and some personal documents were missing. Plaintiff told Defendant Peradotta (correctional officer) about these missing items. Defendant Peradotta reassured Plaintiff that the items should be in Plaintiff's big personal property box (which was elsewhere).

On January 21, 2012, Plaintiff was moved to a different segregation cell. He discovered that this cell lacked hot water, and the window was letting in cold air (Doc. 1, p. 11). Plaintiff closed the window as tightly as possible, but the wind kept blowing through it, making the cell extremely cold that night. Plaintiff told Defendant Jausel (correctional officer) about the window, the inoperative hot water tap, and the missing property items. Defendant Jausel said he would put in a work order and told Plaintiff his items were in his box (Doc. 1, p. 12). Plaintiff later informed Defendant Contes about the hot water and window problems. Four days later, the problems had not been fixed, and Plaintiff again asked Defendants Jausel and Contes to address the matter. Defendant Jausel told Plaintiff to file a grievance.

Due to these conditions, Plaintiff claims that he experienced "painful numbing" in parts of his body while washing himself or washing clothes (Doc. 1, p. 12). Plaintiff remained in this cell until February 3, 2012, and neither the hot water nor the window was repaired during that time (Doc. 1, p. 12-13). Plaintiff learned later that the plumber (an Unknown Party Defendant) finally fixed the hot water problem four days after Plaintiff's release from the cell (Doc. 1, p. 15).

Plaintiff was sent back to general population on February 3, 2012, after he notified Defendant Jausel that he had been kept in administrative segregation for more than 14 days without having a hearing on the pending disciplinary charge. Defendant Klindworth (adjustment committee chair) authorized Plaintiff's release from segregation (Doc. 1, p. 13).

Plaintiff claims that Defendants Klindworth and McBride (adjustment committee minority officer) were derelict in their duties to make sure no inmate is held beyond 14 days without a hearing (Doc. 1, pp. 17-18). He filed a grievance noting this violation of prison rules, and the IDR was ultimately expunged because of the improper delay (Doc. 8-1, pp. 1-3; Doc. 8-2, p. 1).

Upon his release from segregation, Plaintiff was given the rest of his personal property. He asked Defendant Jausel to let him plug in his television to see if it still worked, before he signed the personal property receipt. Plaintiff suspected that inmate porters may have damaged it. Defendant Jausel did not allow Plaintiff to check the television, and threatened that if Plaintiff did not sign the receipt, he would be written up for disobeying an order and be sent back to segregation. Plaintiff then signed the receipt under duress (Doc. 1, p. 14). When Plaintiff was able to unpack his belongings in the regular cell, he discovered that the sound was not working properly on the T.V. set. Plaintiff filed a grievance over this damage (Doc. 1, p. 15).

Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant. After fully considering the allegations in Plaintiff's complaint, the Court concludes that this action is subject to summary dismissal.

Plaintiff has attempted to bring the following claims, none of which state a constitutional claim upon which relief may be granted:

**Count 1:** Unconstitutional conditions of confinement for 14 days in segregation cell;

**Count 2:** Failure to conduct disciplinary hearing within required 14-day time frame;

**Count 3:** Damage to personal property and threat of further segregation if Plaintiff refused to sign property receipt.

**Dismissal of Count 1 – Conditions of Confinement**

Plaintiff claims that the failure of Defendants Jausel and Contes and the Unknown Party Plumber to correct the lack of hot water and defective window in his cell, or to move him, put Plaintiff's health at serious risk for the 14 days he was held in those conditions. He argues that the hot water could have been fixed much more quickly, as it had been in a different instance when the lack of hot water affected a part of the prison used by correctional staff.

The Supreme Court noted in *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981), that the Eighth Amendment prohibition on "cruel and unusual punishment" reaches beyond barbarous physical punishment. It also prohibits the unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime. *Id.*, (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The Constitution also prohibits punishment that is totally without penological justification. *Gregg*, 428 U.S. at 183.

Not all prison conditions trigger Eighth Amendment scrutiny, however – only serious deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes*, 452 U.S. at 346; s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter,* 501 U.S. 294, 302 (1991). The objective analysis examines whether the conditions of

confinement exceeded contemporary bounds of decency of a mature civilized society. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981); *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

The subjective component of unconstitutional punishment is the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson*, 955 F.2d at 22. The subjective component requires that a prison official had a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994). In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). It is well settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

Turning first to the objective component of Plaintiff's claim, the Court notes that prisoners have a right to adequate shelter, including a right to protection from cold. *See Dixon v.*

*Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). To assess whether cold cell temperatures constitute cruel and unusual punishment, courts must consider factors including "the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold." *Id.* at 644; *see also Palmer v. Johnson*, 193 F.3d 346 (5th Cir. 1999) (finding that exposure to extreme cold for 17 hours could constitute Eighth Amendment violation); *Henderson v. DeRobertis*, 940 F.2d 1055, 1058 (7th Cir. 1991) (finding that deprivation of blankets for four days in extreme cold could constitute Eighth Amendment violation). The cold need not present an imminent threat to the inmate's health to implicate the Eighth Amendment. *See Dixon*, 114 F.3d at 642 (prisoner with inadequate clothing or bedding could not keep warm in cell with average temperature of forty degrees).

However, where an inmate fails to show that he was forced to remain in the cold for long periods of time, or does not establish that he suffered unusual deprivations, his complaint may not rise to the level of a constitutional violation. *See Mays v. Springborn,* 575 F.3d 643, 648-49 (7th Cir. 2009) (prisoner who had hurt ears, numb hands, feelings of frostbite, and caught colds because he was never issued adequate winter clothing showed only that he was subject to the "usual discomforts of winter," not the objectively serious harm required to state an Eighth Amendment claim). Moreover, mere temporary discomfort and inconvenience do not implicate the Constitution. *See Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988); *Caldwell v. Miller*, 790 F.2d 589, 600-01 (7th Cir. 1986).

Here, Plaintiff's cell lacked hot water, but he clearly still had cold water available for drinking and washing. He alleges that during the times he was washing his body or clothes with the cold water, the outside air coming in through the window caused him to feel

uncomfortably cold and numb. However, it is clear from the complaint that these effects were temporary, occurring only when Plaintiff used the cold water tap for washing. He does not allege that these conditions adversely affected him during any other activities, such as sleeping, or that he lacked sufficient clothing or bedding to keep himself warm. Furthermore, Plaintiff spent only 14 days in this cell. Based on these allegations, the cell conditions did not present an objectively serious threat to Plaintiff's health, and fall short of meeting the first required component of an Eighth Amendment claim.

Because there was no substantial risk to Plaintiff's health, it is not necessary to analyze whether the Defendants showed subjective deliberate indifference. It is worth noting that Defendant Jausel in fact responded to Plaintiff's request for correction of the cell problems, by submitting a work order for repairs.

Accordingly, Count 1 fails to state a constitutional claim upon which relief may be granted.

**Dismissal of Count 2 – Delay in Disciplinary Hearing**

Plaintiff faults Defendants Klindworth and McBride for failing to hold a hearing on the IDR for fighting within the 14-day period required by Illinois Department of Corrections ("IDOC") regulations. First, it is not the role of a federal court to enforce state laws, much less state administrative regulations. *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001) ("The federal government is not the enforcer of state law"); *Archie v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989). Thus, even if Defendants' actions were in violation of IDOC rules, Plaintiff's constitutional rights are not implicated, and he has no remedy in this Court.

Furthermore, Illinois statutes and correctional regulations do not impose limitations on the discretion of prison officials to place inmates in administrative segregation, including investigative or temporary lockdown or confinement and involuntary protective custody. Accordingly, an inmate's placement or retention in these forms of segregation does not deprive him of a liberty interest or deny his right to due process. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995); *Pardo v. Hosier*, 946 F.2d 1278, 1281-84 (7th Cir. 1991); *Kellas v. Lane*, 923 F.2d 492, 494-95 (7th Cir. 1991); *see generally Sandin v. Conner*, 515 U.S. 472, 483 (1995); *Hewitt v. Helms*, 459 U.S. 460 (1983). Even though the administrative confinement may have been more burdensome than the conditions in general population, that placement is "within the normal limits or range of custody which the conviction has authorized the [government] to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (transfer of inmates to prison with more burdensome conditions of confinement not a violation of due process). Thus, Plaintiff's rights were not violated by his assignment to administrative segregation, even if his stay there had exceeded the 16 days he was held in that status.

Finally, Plaintiff's claim that these Defendants violated prison rules by failing to hold his IDR hearing within 14 days was in fact vindicated when the IDR was expunged from his record. These facts do not present any cognizable civil rights claim.

**Dismissal of Count 3 – Property Damage and Verbal Threat**

It is not clear whether Plaintiff intended to pursue a claim in this action for the damage to his television or the threat by Defendant Jausel to issue another IDR if Plaintiff persisted in his refusal to sign the property receipt. Therefore, the discussion of these allegations shall be brief.

As to the damage or loss of personal property, the Fourteenth Amendment guarantees the right to be free from deprivations of property by state actors without due process of law. However, to state a Fourteenth Amendment due process claim, Plaintiff must establish a deprivation of liberty or property *without due process of law*. If the state provides an adequate remedy, Plaintiff has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995). Thus, Plaintiff's remedy, if any, lies in a Court of Claims action. He in fact did file suit there in April 2013 (*see* Doc. 1, p. 3), and the complaint suggests that this pending suit involves the television claim.

The question of whether Plaintiff's signature on the property receipt truly indicated that the television was returned to him in working order, or whether he signed it only to avoid another disciplinary charge, is for the Court of Claims to determine in evaluating the merits of Plaintiff's property claim. The alleged verbal threat by Defendant Jausel does not rise to the level of a constitutional violation. A mere threat does not constitute an adverse action that might give rise to a retaliation claim; moreover, refusal to obey an officer's order is not constitutionally protected activity. *See Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). This portion of the complaint also fails to state a constitutional claim.

**<u>Defendants Walker, Rsley, Peradotta, and Illinois Department of Corrections</u>**

Defendants Walker and Rsley issued the IDR that caused Plaintiff to be moved to administrative segregation. As discussed above, Plaintiff has no constitutional claims arising

from that confinement or from the IDR itself, which was expunged. Defendant Peradotta's only involvement in the events Plaintiff describes was that he served a copy of the IDR on Plaintiff, and told Plaintiff that his missing pictures and documents should be in his other personal property box. Plaintiff does not mention those missing items further. None of these allegations suggest any violation of Plaintiff's constitutional rights by Defendants Walker, Rsley, or Peradotta.

The complaint does not include any allegations against Defendant Illinois Department of Corrections. Plaintiff merely listed this entity in the caption of his complaint, which is not sufficient to state a claim against a party. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). More importantly, the Illinois Department of Corrections is not amenable to suit in a civil rights action, because it is a state government agency.

The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 219, 220 n. 3 (7th Cir. 1990) (same).

Plaintiff thus fails to state a cognizable claim against the Illinois Department of Corrections.

To summarize, Plaintiff's complaint fails to state any actionable constitutional claims. This case shall therefore be dismissed with prejudice.

**Pending Motions**

Plaintiff filed two motions seeking to amend or add to his already-voluminous exhibits, which total 138 pages (Docs. 8, 8-1, 8-2, 8-3, 8-4, 8-5, 8-6, 8-7, and 8-8).  The motion to amend Exhibit F (Doc. 11), seeks to add six pages of narrative regarding Plaintiff's attempts to obtain review of his amended grievances (Exhibit F is found at Doc. 8-7, pp. 18-32).  This motion pertains to the claims raised by Plaintiff in another case he filed in this Court, *Hopkins v. Bryant*, Case No. 13-cv-940-JPG.  Plaintiff also filed a motion to replace or add Exhibit F (Doc. 15), and included 19 more pages of documents.  The Court has examined this material, and it does not alter the conclusion that this action fails to state a claim upon which relief may be granted.  Therefore, both motions (Docs. 11 and 15) are **DENIED.**

Because this action shall be dismissed, all other pending motions are **DENIED AS MOOT.**

**Disposition**

For the reasons stated above, this action is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted.

Plaintiff is **ADVISED** that this dismissal shall count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).  Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable.  *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this Court within thirty days of the entry of judgment.  FED. R. APP. P. 4(a)(1)(A).  A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal.

*See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch,* 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4).

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: October 4, 2013**

     *s/ Michael J. Reagan*
United States District Judge